**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASON BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 21-1407 |
| | ) | |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| SERGEANT DWAYNE LARDIN; | ) | Re: ECF No. 50 |
| CORRECTIONS OFFICER BOYER; | ) | |
| CORRECTIONS OFFICER MAZZA; *and* | ) | |
| CORRECTIONS OFFICER GERBER, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is a Motion for Summary Judgment filed on behalf of Sergeant Dwayne Lardin ("Lardin"), Corrections Officer Boyer ("Boyer"), Corrections Officer Mazza ("Mazza"), and Corrections Officer Gerber ("Gerber") (collectively, "Defendants"). ECF No. 50. For the following reasons, the Motion for Summary Judgment will be granted.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ason Brown ("Plaintiff"), an individual formerly incarcerated at the Allegheny County Jail ("ACJ"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts claims against ACJ corrections officers and supervisory personnel for the alleged violation of his Fifth and Fourteenth Amendment rights. ECF No. 13. Plaintiff alleges that his civil rights were violated when Defendants employed excessive force after he repeatedly disregarded an order to uncover his cell door window, and then failed to provide medical treatment for his injuries. Plaintiff also alleges that Defendant Lardin improperly exposed and touched his genitalia during

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings. ECF Nos. 3 and 39.

the incident and, as to Defendant Frank, that she failed to properly investigate and resolve a grievance related to this incident. ECF No. 13 ¶¶ 11-19. The Court granted Defendant Frank's Motion to Dismiss for failure to state a claim, and she is no longer a party to this action. ECF No. 40.

Plaintiff failed to conduct discovery as permitted by the Federal Rules of Civil Procedure and as provided for in the Court's Case Management Order issued on October 3, 2022. ECF No. 64. Despite never receiving a discovery request from Plaintiff, Defendants served copies of the relevant portions of his jail medical record and the use of force report on December 27, 2022. ECF No. 63. Defendants also informed Plaintiff that video evidence of the incident was available to view upon request. Id.

On March 6, 2023, the Court issued an Order to Show Cause related to Plaintiff's failure to file a pretrial statement. In his response, Plaintiff asserted that he was reincarcerated from December 9, 2022, through March 17, 2023, and thus "was prevented" from filing a pretrial statement. ECF No. 48. He also complained that he was "never given a discovery … [and] was never served with a Notice of Deposition." Id. Plaintiff's two-sentence pretrial statement lists one witness for trial.[2] ECF No. 46.

Defendants timely filed the pending Motion for Summary Judgment and served Plaintiff with copies of the motion, supporting brief, concise statement of material facts, and appendix of exhibits, including video of the incident at issue. ECF Nos. 50-54. Plaintiff failed to file a response

---

[2] Plaintiff filed an unsigned statement dated February 16, 2021, purportedly from the lone witness identified in Plaintiff's pretrial statement. ECF No. 27. The witness relates a version of the events that corroborates many of Plaintiff's allegations. But because it is unsigned, the Court cannot consider the statement as evidence to defeat summary judgment. See Pension Ben. Guar. Corp. v. Heppenstall Co., 633 F.2d 293, 299 (3d Cir. 1980) (unsigned affidavit could not support denying the summary judgment motions); Davis v. Solid Waste Servs., Inc., 20 F. Supp. 3d 519, 530 (E.D. Pa. 2014) (acknowledging that a "formal affidavit is no longer required" by Federal Rule of Civil Procedure 56(c), but any statement must be "subscribed in proper form as true under penalty of perjury" and contain the declarant's signature. 28 U.S.C. § 1746).

as ordered and the Court issued an Order to Show Cause why this action should not be dismissed. ECF No. 56. Plaintiff filed an "Order to Show Cause/Response to Motion for Summary Judgment." ECF No. 57. In the response, Plaintiff claims that he was not provided copies of his jail records despite his many in-person requests at various Allegheny County offices and buildings. Plaintiff submits documents and audio recordings for review; all reflect that he attempted to obtain copies of his jail records long after the time for discovery had ended, and from entities that are not parties to this litigation. ECF Nos. 59-1 to 59-4; audio recordings #1 - #6. The audio recordings include discussions between Plaintiff and building security staff or personnel at the Allegheny County Jail, the Allegheny County Department of Records (Criminal Division), the Allegheny County Office of Public Defender, the Allegheny County Pretrial Services Department, and a building that houses county offices related to juvenile or family proceedings. Id. No one who spoke with Plaintiff could provide the requested documents. Allegheny County Jail staff suggested that Plaintiff could submit his records request with the Allegheny County Law Department. ECF No. 59 (audio recordings #1, #6). The docket reveals that Defendants' counsel maintains his office in the Allegheny County Law Department. Despite this information, Plaintiff never served Defendants' counsel with a request for production of documents. And despite requesting extensions of time for other Court-issued deadlines, Plaintiff did not seek an extension of time to conduct discovery. Thus, the record is limited to Plaintiff's verified Complaint and the exhibits filed by Defendants in support of the pending Motion for Summary Judgment.[3]

---

[3] Plaintiff's verified Complaint will be treated as an affidavit in opposition to summary judgment. Jackson v. Armel, No. 17-1237, 2020 WL 2104748, at *5 (W.D. Pa. May 1, 2020) (citing Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion)). See also Brooks v. Kyler, 204 F.3d 102, 108 n. 7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from [a pro se prisoner] at the summary judgment phase of the proceedings").

As to the underlying facts, the record includes Plaintiff's admission that while incarcerated in ACJ's Disciplinary Housing Unit, he disobeyed several direct orders issued by Lardin to remove a sheet of paper that covered his cell door window and to turn in his tablet and meal tray. ECF No. 13 at 11-12. Plaintiff told Lardin he was on the toilet and repeatedly yelled that he would not comply until he finished moving his bowels. Lardin instructed Plaintiff that he had a "[l]ast chance, take this [cover] down from the door," to which Plaintiff replied that any effort to check on his status by using the food tray slot would expose his penis to the pod and constitute a "PREA violation."[4] Id.

Lardin's report indicates that he entered Plaintiff's cell because he could not "visually check [Plaintiff's] status." ECF No. 53-2 at 6.  Lardin cited Plaintiff's refusal to uncover his window and Plaintiff's statement that he would not comply until he was done using the toilet "in 20 minutes." Id. Video evidence of Plaintiff's cell block shows that Lardin, Boyer, Mazza, and Gerber walked into Plaintiff's cell. ECF No. 55. Plaintiff claims Lardin "slam[med]" him from the toilet while he was naked, and grabbed his left butt check "while pinching" his penis. ECF No. 13 ¶ 13. Plaintiff also alleges that he was kneed in his upper back, punched, and tased. Plaintiff asserts that he suffered a cut on his chin, scars, and headaches. Id.

Cell block video shows that within 90 seconds of entering the cell, one officer left to retrieve a restraint chair and a handheld camera. About 2½ minutes later, these items were brought to Plaintiff's cell. ECF No. 55. The handheld video reflects that Plaintiff was handcuffed from behind. ECF No. 66. Officers lifted Plaintiff from the ground and placed him in a restraint chair. Officers then removed the handcuffs and placed Plaintiff's legs and arms in restraints. Plaintiff resisted Defendants' efforts to apply the restraints and screamed continuously to other inmates that

---

[4] Plaintiff's reference is to the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601, et seq.

his chin and wrist were injured and that officers were breaking his fingers, kneeing his toes, and exposing his penis. Id. Plaintiff's screams to the contrary, the video does not reflect that his wrist, hands, fingers, or foot were injured during placement in the restraint chair. Id. His prison jumpsuit could not fully be pulled up past his waist because Plaintiff was handcuffed from behind until he was seated in the restraint chair. That said, his genitals were inside his uniform and officers tried to close the small gap at Plaintiff's groin to address Plaintiff's discomfort. The video reflects that Plaintiff's genitals were not visible to anyone through the gap except, perhaps, someone standing directly over Plaintiff.

An officer continued to operate the handheld video while Plaintiff was transported to ACJ's medical unit. Id. Throughout the transfer, Plaintiff repeatedly screamed that Defendants were committing PREA violations due to his exposed penis. Another attempt was made to close the gap in Plaintiff's uniform, which resolved the issue. Plaintiff continued to scream and demanded that the officers provide their names for litigation purposes. Plaintiff yelled that he suffered injuries to his toes, wrist, and chin. Once on the medical unit, Plaintiff continued to yell and demanded a medical exam because "excessive force was used" and "the last couple times" he was placed in a restraint chair, he did not receive a medical exam. He also complained that he had excrement between his buttocks that could result in a rash, and that the exposure of his penis "was a PREA lawsuit." A nurse examined the restraints to determine whether they were appropriately applied. Id. Despite Plaintiff's continuous screams related to alleged injuries, Plaintiff never asserted that he was sexually assaulted, that his buttocks or penis were grabbed, or that beyond exposure, he sustained injuries sexual in nature. In addition, he never complained that he had been tased and there is no record of taser deployment in the incident.

The following day, Plaintiff told an ACJ psychologist that he wished to report a PREA concern. ECF No. 53-3 at 1. The complaint was relayed to Captain Frank who spoke with Plaintiff on February 18, 2021. Plaintiff reported that he was involved in a use of force incident and placed in a restraint chair. Id. at 2. "During this time, he stated his penis was exposed and not covered. Also when the team was securing him in handcuffs someone groped his buttocks." Id. Frank reviewed the available video and determined that Plaintiff's claim of genital exposure was disproved. She also found that any contact with Plaintiff's buttocks was incidental to securing handcuffs while he struggled, and was not an intentional act of sexual misconduct. Id. Thus, she determined that Plaintiff's claim was unfounded. Id. at 3.

Plaintiff's medical records from the day of the incident and the following day reflect that Plaintiff suffered a "small cut to chin with small amount of blood." ECF No. 69 at 3; ECF No. 13-1 at 1. Ten days later, Plaintiff complained of general aches "s/p tazed, placed in chair." ECF No. 69 at 5. A physician assistant ordered a short course of ibuprofen as needed. Id. On March 2, 2021, he complained to medical staff that he had scars and bruising in his "private areas" because of an assault. He was immediately examined and the nurse found "no injuries or any abnormalities to the genital area … or buttock areas as he claimed." Id. On March 5, 2021, two weeks after the date of the incident, Plaintiff complained of pain in both hands from handcuffs. He was wearing a splint and reported that his symptoms were improving. On March 11, 2021, nearly one month after the incident, Plaintiff added complaints of rib pain, lower back pain, and pain to his wrist and thumb. The provider determined that Plaintiff had a full range of motion in his wrist and ordered an x-ray to investigate Plaintiff's complaints of rib pain. Id. at 7-8. The x-ray was negative for injury. Id.

Six months later, Plaintiff filed his first grievance related to the incident and claimed that he suffered genital exposure, his buttocks were "aggressively" gripped and his penis was pinched.

ECF No. 13 ¶ 22; ECF No. 13-3; ECF No. 53-4. Plaintiff also complained that he was tased, punched, and kicked, and that he did not receive his afternoon medications or treatment for his injuries. ECF No. 13-3.

ACJ has an inmate grievance process to resolve complaints and to report allegations of sexual abuse or rape. ECF No. 53-4; ECF No. 32-1. The grievance process is set forth in ACJ's Inmate Handbook and requires that inmates file grievances within fifteen days of an event that is the subject of the grievance. Id. Complaints of sexual abuse may be reported to any jail employee. Defendants concede that Plaintiff timely lodged a complaint that his buttocks were groped and his genitals were exposed. However, they contend that Plaintiff failed to timely lodge a grievance related to the alleged excessive use of force in the incident or an injury to any other part of Plaintiff's body.

Defendants now move for the entry of summary judgment in their favor as to Plaintiff's claims of excessive force on two primary grounds: first, because Plaintiff failed to exhaust available administrative remedies and second, because under the circumstances presented, the force used was reasonable and not excessive. ECF No. 51. In addition, Plaintiff's placement in a restraint chair for eight hours is not objectively unreasonable and cannot support a Fourteenth Amendment due process claim. Finally, Plaintiff's limited genital exposure and incidental contact with his buttocks were not objectively unreasonable.

Plaintiff opposes summary judgment because he was unable to complete discovery and he believes there are genuine issues of material fact that cannot be resolved at this juncture. ECF No. 57. Plaintiff points to no contradictory evidence, but relies on his blanket assertion that the facts are disputed. Id.

## II.   STANDARD OF REVIEW

Summary judgment is properly entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). "A dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" Clews v. Cnty. of Schuylkill, 12 F.4th 353, 358 (3d Cir. 2021) (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of establishing that the evidence fails to support one or more essential elements of the non-moving party's claim. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted). In making this assessment, the court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. New Jersey Dep't of Mil. & Veterans Affs., 487 F.3d 150, 152 (3d Cir.

2007); <u>Woodside v. Sch. Dist. of Phila. Bd. of Educ.</u>, 248 F.3d 129, 130 (3d Cir. 2001). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." <u>Celotex</u>, 477 U.S. at 322–23; <u>Jakimas v. Hoffman-La Roche, Inc.</u>, 485 F.3d 770, 777 (3d Cir. 2007).

Plaintiff is proceeding *pro se* and thus his filings are to be construed liberally. Nonetheless, at the summary judgment stage of the proceedings, the Court need not credit any bald assertions or legal conclusions unaccompanied by evidentiary support. <u>Jones v. United Parcel Serv.</u>, 214 F.3d 402, 407 (3d Cir. 2000). "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." <u>Dawson v. Cook</u>, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). <u>See also</u> <u>Boykins v. Lucent Techs., Inc.</u>, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000); <u>Winfield v. Mazurkiewicz</u>, No. 11-584, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

## III.    DISCUSSION

### A.  Exhaustion of Available Remedies

The Prison Litigation Reform Act ("PLRA") states that a prisoner cannot bring an action under Section 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

This mandatory exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). A prison's

grievance policy "define[s] the boundaries of proper exhaustion." <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007). A failure to exhaust available administrative remedies is an affirmative defense. <u>Id.</u> at 216. A failure to comply with this exhaustion requirement results in the procedural default of the prisoner's claim. <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93 (2006). "But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." <u>Rinaldi v. United States</u>, 904 F.3d 257, 268 (3d Cir. 2018).

Here, ACJ's Deputy Warden states that ACJ's inmate grievance process requires that grievances be filed within fifteen days of the complained of event. ECF No. 53-4. Defendants concede that Plaintiff timely submitted a complaint of sexual assault related to the "groping" of his buttocks and genital exposure during the incident, but contend that Plaintiff failed to timely submit a grievance related to the alleged excessive use of force and the restraint chair. ECF No. 51 at 3. Thus, Defendants contend these claims are barred by Plaintiff's failure to exhaust available administrative remedies.

Upon review, the Court cannot determine whether Plaintiff exhausted any grievance related to the incident at issue. First, ACJ's grievance policy permits an inmate to submit an informal complaint to any staff member. <u>See</u> ECF No. 70-1 at 4. Plaintiff alleges that he "filed a PREA Grievance Report" with Captain Frank on February 17, 2021, and received a response on February 18, 2021. Defendants concede that Plaintiff's initial grievance related to sexual abuse was properly and timely submitted. Yet neither party presents evidence on which the Court may determine whether Plaintiff properly completed the grievance process. <u>See, e.g.</u>, <u>Prater v. Dep't of Corr.</u>. 76 F.4th 184, 203-04 (3d Cir. 2023) (discussing necessity for proper exhaustion of claims in

accordance with provisions of prison policy). The relevant ACJ policy for complaints of sexual

abuse provides that:

> [i]nmates who are dissatisfied with the disposition of a complaint will have five (5)
> days after receipt of the notice of decision to appeal to the Warden or designee in
> writing using the Inmate Complaint/Appeal Form. The inmate must also enclose
> the original pink copy of the Inmate Complaint/Appeal Form and the original pink
> copy of the Complaint Findings Form with the Inmate Appeal Form. Id. The
> Warden or designee will have fifteen (15) working days after receipt of the
> documents to make a determination on the appeal and to reply to the inmate. The
> reply will be in writing and will be provided on the Appeal of Complaint Officer's
> Decision - Warden's Findings Form.

> At any level of the administrative process, including the final level, if the inmate
> does not receive a response within the allotted time frame for reply including any
> properly notice extension, the inmate may consider the absence of a response a
> denial at that level.

ECF No. 70-1 at 5.

In this instance, Plaintiff received a response to his informal complaint of sexual assault on

February 18, 2021.  ECF No. 13-2. However, the record does not reflect whether Plaintiff filed an

appeal from the initial disposition. Rather than address this potentially dispositive issue,

Defendants assert that summary judgment is properly entered on Plaintiff's claims related to the

use of excessive force because Plaintiff failed to submit a separate grievance related to physical

contact that occurred during the same incident. Defendants do not cite authority – either from

ACJ's grievance policy or case law – for the proposition that physical harm that occurs in the same

incident as alleged sexual abuse must be the subject a separate grievance. Thus, the Court will not

impose this requirement. Further, considering the absence of evidence by Defendants to assess

whether Plaintiff completed the grievance process after his initial complaint, the motion for

summary judgment for failure to exhaust is properly denied.

B.  **Excessive Force**

Alternatively, Defendants contend that summary judgment is properly entered in their favor as to Plaintiff's claim of excessive force because the use of force was objectively reasonable under the circumstances. ECF No. 51 at 5-11.

Plaintiff alleges that he was a pretrial detainee when the incident occurred. ECF No. 13 at 4. As a pretrial detainee, Plaintiff is afforded protection under the Due Process Clause of the Fourteenth Amendment from "'the use of excessive force that amounts to punishment.'" Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir. 2021) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)).  Thus, Plaintiff must show that the force used against him was objectively unreasonable "in light of the 'facts and circumstances'" presented. Lombardo v. City of St. Louis, Missouri, 141 S. Ct. 2239, 2241 (2021) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)).  Despite his ultimate burden, Plaintiff presents only repeated broad assertions that there are disputed issues of material fact sufficient to preclude summary judgment. ECF No. 57.

The United States Supreme Court has identified six factors to evaluate whether force was excessive: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." Kingsley, 576 U.S. at 397. The Court must "analyze these circumstances 'from the perspective of a reasonable officer on the scene.'" Jacobs, at 194 (citing Kingsley, 576 U.S. at 397). In doing so, the Court is mindful that "'[s]afety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.' ...

'Officers facing disturbances "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving."' Id. (citing Kingsley, 576 U.S. at 399).

In this case, a reasonable jury could not conclude that Plaintiff's Fourteenth Amendment rights were violated. The cell block and handheld video evidence, even when construed in the light most favorable to Plaintiff,[5] reflect that notwithstanding Plaintiff's active resistance to restraints, the force used by Defendants and resulting injuries to Plaintiff were minimal. Plaintiff's persistent refusal to uncover his cell window required officers to enter his cell to determine whether he was safe, engaging in self-harm, or otherwise violating prison rules. ECF No. 53-2 at 5. Plaintiff's Complaint corroborates Lardin's version of events regarding the attempts made by Lardin to temper the situation by repeatedly asking Plaintiff to uncover his window and providing Plaintiff a "last chance" warning. Defendants used minimal force to restore order and to place Plaintiff in the restraint chair. To the extent that Plaintiff asserts his toes and wrist or fingers were injured during placement in the chair, the video evidence shows that any discomfort was minimal and resulted from Plaintiff's active resistance.

The Court acknowledges that there is no video evidence depicting the force used to gain control over Plaintiff inside his cell where he alleges he was "slammed" to the ground, his penis was pinched, and his buttocks were groped. The handheld video camera was brought to the cell with the restraint chair. ECF No. 55. The recording begins with the moment Plaintiff was lifted from the ground to be placed in the chair. ECF No. 66. Plaintiff can be heard repeatedly yelling about injuries allegedly sustained while the chair restraints are applied. However, other than a dreadlock hair attachment coming loose and a scraped chin, Plaintiff does not mention any

---

[5] In cases such as this where there are video recordings of the incident, the Court need not adopt Plaintiff's version of the facts if the recordings "blatantly contradict[ ]" his version "so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007).

sexualized touching, groping, or pinching, and does not say he suffered any other injury in the initial encounter. Considering Plaintiff's ongoing resistance while being placed in the restraint chair, and the minimal injuries sustained as reflected both in Plaintiff's repeated oral complaints recorded at the time of the incident and in the medical records supplied by both parties, a reasonable jury could not find that the force used was objectively unreasonable. Thus, summary judgment is properly entered as to Plaintiff's Fourteenth Amendment excessive force claim.

### C.  Sexual Assault

Detainees have a clearly established right not to be sexually assaulted by prison employees. E.D. v. Sharkey, 928 F.3d 299, 307 (3d Cir. 2019) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 143 n. 15 (3d Cir. 2001) (in turn citing Farmer v. Brennan, 511 U.S. 825, 833-34 (1994)), and Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989)). Thus, allegations of sexual assault, which cannot serve a legitimate governmental objective and thereby constitute impermissible punishment, "set forth a plausible violation of [the] right to personal bodily integrity protected by the Due Process Clause of the Fourteenth Amendment." Sharkey, 928 F.3d at 307. See also Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) ("sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment" because it "invades the most basic of dignity interests: to be treated as a human being.").

Defendants argue that summary judgment is properly entered on Plaintiff's claim of sexual abuse because any alleged contact with Plaintiff's buttocks and penis was incidental to the legitimate use of reasonable force to restore order. To the extent that Plaintiff's genitals were exposed, they were visible only to the officers who pulled up his jumper and placed him in the restraint chair, and only for the short time it took to reach the jail elevator. Under these

14

circumstances, Defendants contend the alleged misconduct cannot support a Fourteenth Amendment claim. ECF No. 51 at 11. The Court agrees.

The Third Circuit has explained that the relevant inquiry is "contextual" and "fact specific." Ricks, 891 F3d at 478.

> The scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact. But it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline. In context, including whether it violates established prison procedures, other sexualized touching may also be objectively serious.

Id.  Plaintiff does not allege that the contact with his penis or buttocks, or his exposure during transport, was for purposes of sexual gratification or humiliation. Instead, Plaintiff alleges that the contact occurred while taking him to the ground to restrain him and thus was incidental to restoring order. Considering the undisputed "scope, place, and timing of the offensive conduct," id., a reasonable jury could not find that the alleged contact and exposure  was objectively serious or sufficient to support a cognizable constitutional violation. Armstrong v. Diraimo, No. 17-237, 2018 WL 6788524, at *4 (W.D. Pa. Dec. 26, 2018), aff'd, 781 F. App'x 61 (3d Cir. 2019) (collecting cases and finding that a single incident of contact with Plaintiff's penis and scrotum during a pat down search was not objectively serious). Thus, summary judgment will be entered in favor of Defendants.[6]

## IV.    CONCLUSION

---

[6] The Court does not reach Defendants' assertion that their conduct is subject to qualified immunity. ECF No. 51 at 11. Further, while Defendants perceive a claim based on Plaintiff's placement in a restraint chair, upon review of the Complaint and Defendants' citation to ECF No. 15 (the Court's service order), it is apparent that Plaintiff does not assert a claim arising from confinement in a restraint chair for eight hours. Thus, the Court does not address this issue.

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 50, is properly granted. An appropriate Order follows.

Dated: October 17, 2023                     BY THE COURT,

                                            MAUREEN P. KELLY
                                            UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing

        Ason Brown
        P.O. Box 492
        Pittsburgh, PA 15230